JOSEPH SHEPPARD v. REUBEN HUNT and others.

4    277
54L 584

4    277
68L 384

In the year seventeen hundred and twenty-five, a tract of land was devised for the benefit of a free school in "the *township* of Greenwich." In the year seventeen hundred and forty-nine, the same land was conveyed, by persons acting on behalf of the "town of Greenwich," by indenture, to D. S., reserving a yearly rent of thirteen pounds, to be paid unto the trustees for the time being, as they shall be chosen by the inhabitants of "the *town* of Greenwich" included within certain boundaries in the said deed particularly specified. The rent was paid for about eighty years. The trustees chosen by "the *town* of Greenwich." *Held, that those claiming under him*, were bound to pay the rent reserved to the trustees chosen by the town of Greenwich, pursuant to the reservation in the said deed, and not to the inhabitants of the "township of Greenwich."

The grantee in a deed, and those claiming under him, cannot deny the binding authority of a reservation in the deed.

Long acquiescence in a given construction of an instrument, renders it unwise and impolitic to change such construction.

Public policy forbids the disturbance of rights ancient and well settled by the practice of the parties in interest.

BILL of interpleader. The case was this. Zachariah Barrow, in and by his last will and testament, bearing date on the thirtieth day of July, in the year of our Lord seventeen hundred and twenty-five, duly executed to pass real estate, gave and

devised as follows: "Imprimis. I will that all my just and hon-
est debts be paid which I owe to any man ; then I give to my
well beloved mother-in-law, Mary Field, all my farm and plan-
tation, with dwelling-houses, out-houses, &c. during the term of
her natural life. Item. It is my will that, after the decease of
my mother-in-law, Mary Field, I give the said farm for the
benefit of a free school for the township of Greenwich for ever."

After the death of the devisor, it appearing that he had ac-
quired title to the said devised premises under John Fenwick,
and his title appearing to be defective, the inhabitants of the
town of Greenwich procured one Ebenezer Miller to procure
a good title for the said premises from the proprietors of West
New-Jersey, which was done. A survey of the said tract un-
der title from the proprietors, having been made in the name of
the said Ebenezer Miller, on the fourteenth day of November,
seventeen hundred and forty-nine, the said Ebenezer Miller,
together with Ananias Sayre and Thomas Ewing, attorneys
duly constituted by the inhabitants of the town of Greenwich,
conveyed the said premises, by deed of indenture bearing date
on the day and year last aforesaid, unto David Sheppard, his
heirs and assigns, for the consideration of five shillings, yielding
and paying therefor the yearly rent of thirteen pounds, current
money of New-Jersey, on the first day of December in each
year, "unto the trustees for the time being, as they shall be
chosen by the inhabitants of the town of Greenwich" contained
in certain bounds in the said deed particularly specified; all
which said yearly rents, with the arrearages thereof, were by
the terms of the said deed "to be and remain for the use, bene-
fit and maintenance of a free school to the inhabitants of the
town of Greenwich, aforesaid, that are contained in the above
mentioned bounds, their heirs and assigns for ever."   And in
case the said rent should be at any time in arrear, the trustees
of the, said inhabitants of the town of Greenwich, chosen for
the time being, or any of them, were by the said indenture
authorized and empowered to enter on the premises and distrain
for the same.

Immediately after the execution of the said deed, and by virtue thereof, the said David Sheppard entered into possession of the said premises, and he and his heirs continued to hold the said premises, and paid the rent reserved by the said deed, regularly up to the first day of December, eighteen hundred and thirty-four, to the trustees chosen by the inhabitants of the town of Greenwich, as described by the said indenture, and the same was expended for the benefit of a free school for the said inhabitants.

In the year eighteen hundred and thirteen, Joseph Sheppard, the defendant, purchased a part of the said premises, subject to the rent reserved in the said indenture ; whereupon an agreement was entered into between him and the inhabitants of the said town of Greenwich, by which the portion of the said rent to be paid by the said Joseph Sheppard, was fixed at twenty-five dollars and twenty-five cents, which was paid by him annually to the said trustees, from the year eighteen hundred and thirteen up to the first of December, eighteen hundred and thirty-four.

The inhabitants of the town of Greenwich are not a body corporate in law—the township of Greenwich, as incorporated by law, embracing considerable territory not contained in the town of Greenwich as described in the said indenture. From the making of the said indenture, the inhabitants of the said town of Greenwich, as described in the said indenture, from time to time chose trustees, and maintained a free school with but little intermission ; and on the twentieth of March, eighteen hundred and forty-one, they duly elected Reuben Hunt and four others trustees of the said inhabitants. The said Joseph Sheppard having refused to pay the rent in arrear, the trustees so elected were, by a vote of the inhabitants, instructed to file a bill in chancery for the recovery of the said rents. Accordingly, on the twenty-fourth of February, eighteen hundred and forty-two, a bill was filed in this court by the said Reuben Hunt, Enoch Mulford, David Jones, Samuel C. Fithian and Charles B. Fithian, (the trustees so elected as aforesaid,) on behalf of them

selves and all other the inhabitants of the town of Greenwich, against the said Joseph Sheppard, for the recovery of the said rent in arrears, setting forth substantially the above related facts.

On the thirteenth of July, eighteen hundred and forty-two, the said Joseph Sheppard filed a bill of interpleader against the complainants in the original bill, and against the inhabitants of the township of Greenwich, in the county of Cumberland. The bill of interpleader states, among other things, that the premises were conveyed to the complainant with a covenant of warranty against all claims "except the annual or yearly annuity, right or demand, which the township of Greenwich hath on the premises for ever;" that the complainant, from the time of the said conveyance, paid the said yearly rent of twenty-five dollars and twenty-five cents to the inhabitants of the *township* of Greenwich; that he continued such payments until he was notified that payments to the township of Greenwich would be contested, and that the complainant would be held responsible for the whole of said rent to the inhabitants of the town of Greenwich; that he is ready and willing to pay the said rent, but both of the said parties persisting in their claims, and the complainant being wholly ignorant to whom the said rents rightfully belonged, could not with safety pay either, until the rights of the claimants were settled by a competent tribunal; that by an act of the legislature of the state of New-Jersey, passed the nineteenth of January, A. D. seventeen hundred and forty-seven, the county of Cumberland was set off from the southern part of the county of Salem; and in and by the said act, the township of Greenwich was incorporated, and the boundaries thereof particularly defined; the said boundaries, as described by the said act, being much more extensive, and embracing a greater number of inhabitants, than the town of Greenwich as defined in the said indenture to David Sheppard.

An answer was filed to the bill of interpleader, by the complainants in the original bill, in which, among other things, they state, that they have reason to believe that the boundaries

of the township of Greenwich, at the date of the said devise by the said Zechariah Barrow, were different from the boundaries of said township as prescribed in the act creating the county of Cumberland, but that they were unable with certainty to ascertain the same; they deny that the said Zachariah Barrow had any title to the said premises, and insist that the inhabitants of the town of Greenwich acquired title from the council of proprietors; that by the conveyance to the said David Sheppard, the rent was reserved to the inhabitants of the town of Greenwich, as described in the said deed, and that the said conveyance and reservation were acquiesced in for nearly a century; they deny that the said rent was ever paid to the inhabitants of the township of Greenwich, but insist that it was always paid to the trustees chosen by the inhabitants of the town of Greenwich, in accordance with the reservation in the said deed, or to others with their assent and concurrence. They allege that the township of Greenwich have in fact abandoned all claim to the said rents; that the said Joseph Sheppard is himself the party in interest, and has set up the claim on behalf of the inhabitants of the township of Greenwich, to defeat the just claim of the defendants to the said rents.

The cause was heard upon the bill of interpleader, answer, replication and proofs.

*R. P. Thompson*, for complainant.

At the April term of this court, eighteen hundred and forty-two, a suit was commenced by Reuben Hunt and others, against Joseph Sheppard, the above complainant, to enforce the payment of certain rents to which the complainants in that suit alleged themselves to be entitled. These rents had been a source of dispute and controversy between the "town of Greenwich" and the "township of Greenwich," in Cumberland county; both parties claiming the right to receive them, and each insisting that Sheppard, the present complainant, should pay to them.

By the records of the township, it appears that from eighteen

24*

[Sheppard v. Hunt et al.]

hundred and nine to eighteen hundred and thirty-two, the town meeting disposed of these rents of the town place, in the building of a school and town house, and for the purposes of education in the township.

In some of the years, the rent was paid to the trustees for the "town," and in others to the "school committee of the township," but no dispute appears to have arisen until the year eighteen hundred and thirty-one, when there is found an order of the township meeting "that the school committee be authorized to call upon the person who has possession of the papers respecting the town place belonging to the township, and request them for the township." In eighteen hundred and thirty-two, at the township meeting, the town clerk is directed to take charge of these papers for the township. In eighteen hundred and thirty-five, at the township meeting, a resolution was passed "that the collector of the township is authorized to receive the money arising from the town place."

In eighteen hundred and thirty-six, at the annual township meeting, a preamble and resolutions were adopted, affirming the rights of the township to these rents, and again asserting the authority of the collector of the township to receive them.

At the same meeting a resolution is passed "that all the papers relative to the property, be presented to the governor of this state, and obtain his opinion to whom the yearly rents of said property, in justice and equity belong." The committee appointed waited on the governor, who declined to give any opinion.

In eighteen hundred and thirty-nine, the township meeting authorize the clerk to call on Joseph Sheppard and Benjamin Tyler for the sum due for the township place, and if they refuse to pay, that the clerk be directed to prosecute them.

In consequence of the state of facts exhibited by the record above referred to, Joseph Sheppard refused to pay, after eighteen hundred and thirty-six, until the matter could be legally settled, and the proper person to whom he might pay, should be ascertained.

The matter continued to be disputed between the parties until the year eighteen hundred and forty-two, when the suit was brought in this court.

Joseph Sheppard being thus sued by those who represented the "town of Greenwich," was advised by counsel, that his proper and safe course was to file a bill of interpleader, and thus to seek the opinion of this honorable court to which of the contending claimants he could with safety, and according to law, pay the rent due.

The complainant made the representatives of the "town" and "the inhabitants of the township of Greenwich" both defendants. The former only have answered his bill.

What is the proper office of a bill of interpleader?

This bill is preferred where two persons claim of a third the same debt or the same duty, as if rent be demanded of a tenant by two several persons, and he be ignorant to which it is actually payable, he is entitled to protect himself against their separate claims, by exhibiting against them a bill of interpleader. *Blake's Chan.* 31; 1 *Mad. Chan.* 172; *Cooper's Equity*, 45.

The counsel of the defendants asserts, and cites authorities to prove, that the claim must be persisted in at the time the bill is filed; and then remarks " in this case the township have actually abandoned all claim to this rent." I answer, the claim has always been insisted upon, and so far from being abandoned, the proof is directly otherwise.

The only evidence of an abandonment by the township on which defendants' counsel relies, is the record of the township meeting of eighteen hundred and forty-one, March ninth, where a resolution is passed, authorizing the clerk to give up the papers to the clerk of the trustees of the town school house, and there is also a statement that a gentleman of the bar had given his opinion that the annuity could not be recovered by the township clerk.

But did the township decide that the claim they had made, and year after year insisted on, was abandoned? If so, where is the record of it? Did they ever obtain an opinion that the

" inhabitants of the township of Greenwich" could not recover the rent? If abandoned it would have been recorded in the minutes of the township.

But if it is contended that the claim was abandoned by giving up the papers, why was not the complainant informed of it?

The counsel of the defendants, aware that this was important, and that he could not prove it, has submitted interrogatories to the complainant, one of which is this, "Was you, or was you not informed, or did you not hear after the meeting of the inhabitants of the township of Greenwich, held, &c., March, eighteen hundred and forty-one, that the said meeting had relinquished all claim to said rent," &c.?

Now the answer of the complainant to the fourth interrogatory is, "I was not present at the meeting, &c., in March, eighteen hundred and forty-one, but I was informed some time afterwards that the papers relative to the town place dispute were to be given up, but I was not informed that the claim of the township to the rents was relinquished, but on the contrary, I have always understood that the claim of the township is insisted upon, and will be maintained until the chancellor of the state shall settle the matter between the parties."

This is the proof in the cause, and shows that if any abandonment of this claim was ever made, (which is expressly denied by the complainant,) it was never made known to him, but that the claim was always asserted and insisted upon.

The defendants' counsel remarks, that no demand has been made on Sheppard, the complainant, by the township, since the town meeting of eighteen hundred and forty-one.

This can have no influence either for or against him; it was well known that he had declared his intention not to pay, and desired the parties to have it settled by a legal tribunal; a new or continued demand upon him could not have altered his determination. He expressly states in his bill, under oath, that both parties had made this claim, that he had been threatened by both with prosecution, that he proposed to submit the same to arbitration, or to the decision of some gentleman learned in the

law. These propositions were all declined, and his only safety seemed to be to file his bill of interpleader.

A mere claim is ground for interpleader. 1 *Mad. Chan.* 173.

The complainant respectfully insists that his case is clearly one of those which it is the peculiar province of a court of equity to relieve and protect, and that the proper mode to seek that relief is by a bill of interpleader.

But it is insisted by the counsel of the defendants, that Sheppard, the complainant, does not stand indifferent.

The complainant has filed his bill in pursuance with the law, and he has verified the accuracy of his statements; he seeks relief; he discloses his difficulty; he knows not to which of these parties to pay; he but tells their mutual story, they could not tell who ought to have it, and they resolved to ask governor Vroom to tell them to which of these very parties "these rents, in justice and equity, did belong." Where is the proof of his partiality? Where his want of neutrality? He admits that he owes the money; he proffers himself ready to pay; he takes part with neither, and asks of this court its instruction.

To the complainant it can make no possible difference, who gets this money; to one of the parties he must pay it, and he cares not in the slightest degree, to whom it shall be awarded; he but asks as justice and equity to himself, that the controversies of these different parties shall not be fought at his expense.

The counsel for the defendants asks why the complainant did not make known his difficulty to the trustees, or their solicitor, when he had so fair an opportunity to do so?

I answer, that he did make known his difficulty. In answer to the sixth interrogatory, the complainant says, "I told the person who brought the letter, (of L. Q. C. Elmer, esquire, demanding the rent for the town of Greenwich,) that I had concluded not to pay any further rent until the decision of a competent tribunal had determined to which of the parties I could pay with safety. I also mentioned to him generally, the diffi-

culty I had in knowing to whom to pay; that both parties claimed it, and I had paid both, and I really wanted to know how I could pay with safety to myself and to my estate."

This is the proof in the case, and yet we are told by the defendants' counsel, " that they never knew he had any such reason for refusal." And whose fault is it, that they did not know? Surely, the fault of their messenger; if he was faithless or negligent, and did not report to his employer the answer he got, then it is their misfortune, not our fault.

I insist upon it, that the defendants did know he had " this ground of refusal."

The whole case proves that they knew it. What caused the stoppage in the payment of the annuity after eighteen hundred and thirty-six? I answer, the very reason which caused the resolution to ask the advice of governor Vroom, to know which party had a right to the money? These defendants could not have been ignorant of that. The very last payment of rent, in eighteen hundred and thirty-five, " up to eighteen hundred and thirty-six," was made to Reuben Hunt, one of the defendants. Can it be supposed that in eighteen hundred and thirty-seven, he did not call again for the rent? And is it at all likely that he did not know the reason he did not get it?

The complainant stopped paying in eighteen hundred and thirty-six, and ever since, this subject has been a continued source of angry controversy, at every annual town-meeting in Greenwich.

The complainant admits, as he did in his bill of interpleader, that there remains in his hands all the rents since the twenty-fifth day of March, A. D. eighteen hundred and thirty-six; and calculated to March twenty-fifth, eighteen hundred and forty-two, six years, without interest, they amount to one hundred and fifty-one dollars and fifty cents, which sum he is ready and willing to pay, according to the opinion of this honorable court.

In relation to the argument of defendants' counsel, as to the title of the town or the rights of the township, I have nothing to say; the complainant has nothing to do with that question,

it is wholly a controversy between the "town" and "township." The bill of interpleader was filed, that they might appear and make known their rights, and if "the township" do not choose to do so, it is not to affect the complainant; his rights are made known and he feels confident they will be sustained.

The complainant respectfully insists that the costs attending the original bill, as well as the costs of the bill of interpleader, should be deducted out of the fund in court; he protests most earnestly, that he should not be compelled to pay them; he has not been guilty of laches; the disputes of the parties placed him in a position where prudence forbade his paying the rents until the proper payee was settled by legal decision.

Plaintiff is entitled to his costs out of the fund in court, on a bill of interpleader: 16 *Vesey,* 204 ; 9 *Ibid*, 168 : *Cooper's Eq.* 49 ; 1 *Harr. Chan.* 117.

*L. Q. C. Elmer,* for defendants.

The bill of interpleader has been improperly filed; there is no case for such a bill, and of course, therefore, it should be dismissed with costs.

A bill of interpleader is exhibited where two or more persons claim a debt, &c. from the plaintiff, by different or separate interests ; and where the plaintiff can only protect himself in this way, from conflicting claims: *Story's Eq. Plead.* 237.

It is likened to a bill filed by an executor or trustee, to obtain the direction of the court: *Angell* v. *Hadden,* 16 *Vesey, jr.* 203.

Of course there must be substantial ground for it; such a real conflict or difficulty, at least, as to raise a real doubt in the court or in the counsel, and not the mere pretence of a claim. And the opposing claims must be persisted in at the time of the bill filed. All the cases show or imply this.

*Duke of Bolton* v. *Williams,* 4 *Brown, Chan. R.* 297 ; 15 *Vesey,* 244 ; 16 *Vesey,* 203 ; *Cooper's Chan. Cases,* 49, 56 ; *Atkinson* v. *Manks,* 1 *Cowen,* 691 ; *Richards* v. *Salter,* 6 *John. Chan. R.* 445 ; 4 *Paige, R.* 384.

In this case, the township have actually abandoned all claim to this rent.

And Sheppard knew this; by his answer to interrogatory fourth, it would seem, indeed, that he affects not to understand that the town-meeting, by ordering the papers to be returned to the trustees of the "town," did thereby mean to abandon their claim to the rent. But that such was the meaning, is evident, from the whole transaction.

He says, in that answer, that he has always understood, that the claim of the township is insisted upon, and will be maintained, &c. But from whom, or how he so understood does not appear. There is no proof of any such intention. The official proceedings show the contrary.

It appears that no demand has been made on him, by the township, since the town-meeting in March, eighteen hundred and forty-one.

In fact, the township has never formally claimed this rent of him, nor forbidden him to pay the town.

At the most, the township, when the town, after acquiescing a few years, at the commencement of the public-school law, in the receipt of the money by the township, for the first time that they did so receive it, withdrew that acquiescence and received the rent for the exclusive use of the town, took measures to ascertain whether the township had a good claim, and finding they had not, they gave it up, or at any rate do not prosecute it, or threaten to prosecute it, or interfere with it.

Sheppard never offered to pay the rent upon an indemnity, nor to refer the question (as he alleges) to counsel; and when informed by the solicitor of the trustees, that eminent counsel had given an opinion that they could collect the rent by a bill in this court, he makes no reply or offer on the subject, but contents himself, as he states in answer to interrogatory sixth, with telling the person who casually carried the letter, that he did not know to which party he ought to pay it. Why did he not make known his difficulty to the trustees, or their solicitor, when he had so fair an opportunity to do so? They never heard of his

[Sheppard v. Hunt et al.]

reply to the person who delivered the letter; nor, so far as appears, did he wish they should. In fact, they never knew that he had any such reason for refusal, supposing then, as now, that he thought he could evade payment altogether.

To allow a party who acknowledges he owes a debt, to interpose an interpleader, because some other party once claimed that debt, when the claim was abandoned or not persisted in; and especially, in a case where the pretended adverse claim never had even a colorable foundation in law or equity, and where no respectable counsel are even alleged to have sanctioned such claim, or advised that the party was even in danger from it, would be to allow the bill of interpleader to be grossly abused.

The bill of interpleader is not favored: 1 *Mad. Chan.* 148.

And it is evident, that Sheppard does not stand indifferent: 2 *Vesey*, 311; and *Story, Eq. Plead.* 238, note 3.

I do not charge collusion with the township, for the township has not countenanced this proceeding; but I do charge, that it is evident from the frame of the bill, and from the answers to interrogatories, that Sheppard does not stand indifferent; does not use the bill of interpleader so much to protect himself from two adverse claims, as for a defence against our bill, by setting up a right in somebody else, which is not the proper office of interpleader.

It is plain that the township has no colorable claim to this rent. The rent is not payable to the township, by the deed. Barrow did not devise the rent to the township, but the farm itself. If the township has any claim, it is to the farm.

But the township has no claim, either to the rent or the farm. If they ever had, time has barred it. The town received the rent without dispute, from seventeen hundred and forty-nine to eighteen hundred and thirty. And the receipt of it from eighteen hundred and thirty to eighteen hundred and thirty-four, by the township, was not adverse to the town, but by its acquiescence.

It is plain that the township never claimed this rent until

recently. Their records from seventeen hundred and fifty-two till eighteen hundred and nine, contain no notice of it.

And in eighteen hundred and nine and eighteen hundred and eleven, the right of the town to it was acknowledged by the township.

It is believed that the township, at the time Barrow made his will, either had no defined limits, which is probable, (see act establishing township of Fairfield, *Spic. and Leam.* 556,) or that the limits were the same as those defined in the deed.

It will be noticed, that the will was made in seventeen hundred and twenty-five; the deed to David Sheppard, in seventeen hundred and forty-nine; the act establishing the township of Greenwich, in seventeen hundred and forty-seven, just before the making the deed, and after the will; and this, no doubt, occasioned the insertion in the deed of a limited territory.

This act of seventeen hundred and forty-seven, set off Cumberland county from Salem. The bounds of the townships in Salem, prior to this, are not to be found in any law or record extant. Indeed, the limits of all the townships in Salem county, remain to this day unknown, except as they are defined by usage and tradition.

Whatever may have been the reason for reserving the rent to the trustees of certain defined limits, and not to the township, it was so done, and was never questioned for more than eighty years, from seventeen hundred and forty-nine to eighteen hundred and thirty. It is too late to disturb it now, or even to inquire into the reason of it; and certainly, Joseph Sheppard cannot disturb, holding as he does, under this title.

Besides, Barrow had no title to this land. The town actually purchased it anew, and got a title for it, under which it is now held.

It is matter of history, that Fenwick established a manor at Greenwich, and granted land there; and that all his grants in New-Jersey were afterwards repudiated by the proprietors; those in Salem town, being confirmed by a special law: *Spic. and Leam.* 461.

[Sheppard v. Hunt et al.]

If a survey was ever made by Fenwick, it was never recorded.

The act of seventeen hundred and nineteen, (*Rev. Laws*, 17, *sec.* 11,) avoids all surveys not duly recorded : *Den.* v. *Sharp*, 4 *Wash.* 616.

But at all events, Sheppard holds under the town, and is bound, as the assignee of David Sheppard, to pay the rent to the town, and to no one else. The town is his landlord, and he cannot deny its title. Nor can he file an interpleader, in consequence of a claim (as this is) paramount to that of his landlord, but only in a case where the conflict arises out of acts of the landlord himself, subsequent to the case: *Dungey* v. *Angove*, 2 *Vesey*, 312 ; *Clark* v. *Byne*, 13 *Vesey*, 383 ; *Cowtan* v. *Williams*, 9 *Vesey*, 107.

These cases, it is submitted, are decisive against this bill of interpleader.

If the township has a right, it is not one arising out of any act of Sheppard's landlord, the town, but one paramount; it questions the title of the town altogether.

The original bill of *Hunt and others* v. *Sheppard*, remaining unanswered, is to be taken as confessed, and complainant is entitled to a decree referring it to a master to ascertain the rent in arrear.

Both parties, it is supposed, wish the matter finally disposed of. Every thing now appears that can hereafter.

Even where the bill of interpleader is proper, the court will make a final decree, where the case is ripe for it: *Angel* v. *Hadden*, 16 *Vesey*, 203.

The defendant, by his pretended bill of interpleader, confesses his liability to pay the rent; and not having answered the bill, nor shown any good excuse for requiring to be sued, he ought to pay it with costs.

A bill in this court is the proper remedy.

No suit at law can be sustained by the trustees, the inhabitants of the town not being incorporated. No such thing is known in law, as a right devolving upon the inhabitants of a

[Sheppard v. Hunt et al.]

particular district of country; they cannot claim as heirs or representatives, or legal successors of those who lived in the same district at a prior time. .

Although there is, strictly speaking, no proper grant of this rent, yet this grant took effect upon the principle of a grant or dedication to public or charitable uses, as explained by judge Story, in the case of the *Town of Pawlet* v. *Clark*, 9 *Cranch*; 331.

The case of *Beatty and others* v. *Kurtz and others*, 2 *Pet. R.* 566, fully sustains this case.

The statute of Elizabeth, and some subsequent statutes, under the authority of which the English court of chancery usually proceeds in dealing with charities, is not in force in New-Jersey; nor was it in Maryland, by the laws of which the case of *Beatty* v. *Kurtz*, was decided. But the courts of equity in England, and in this country, have always favored charities, and upheld them by virtue of their general authority to afford relief in all cases where it cannot be had by law.

The jurisdiction of the court to enforce rents, in all cases where there is any difficulty at law, appears to be well established: 1 *Mad. Chan.* 25 ; 2 *Vernon*, 359 ; *Holden* v. *Chambers*, 3 *Peere Wms.* 256 ; *Duke of Leeds* v. *Radnor*, 2 *Brown*, *C. R.* 518.

As it is admitted that the rent has been paid up to March twenty-fifth, eighteen hundred and thirty-six, and none since ; if the chancellor shall be of opinion that the complainants, Hunt and others, are entitled to a decree, the amount can be ascertained by consent, without the expense of a reference.

THE CHANCELLOR. By the will of Zachariah Barrow, in seventeen hundred and twenty-five, the farm in question, after a life estate to Mrs. Field, was devised to the township of Greenwich, for the support of a free school. By the recitals in the deed of seventeen hundred and forty-nine, from Ebenezer Miller, Ananias Sayre and Thomas Ewing, to David Sheppard, it seems doubts were entertained as to the title of Barrow to the

[Sheppard v. Hunt et al.]

farm, and these gentlemen were appointed by the inhabitants of the township of Greenwich, to take such measures as might be necessary, "for the strengthening and securing the title of the said lands to and for the uses above mentioned." The grantors in this deed, after acquiring a fresh title, made this conveyance, reserving an annul rent of thirteen pounds, unto "the trustees, for the time being, as they should be chosen by the inhabitants of the town of Greenwich, "included within certain boundaries therein described." The question presented is, shall the rent reserved be paid to the trustees appointed by the inhabitants of the town of Greenwich, living within said boundaries, or to the township of Greenwich at large, and its proper officers.

It is obvious that Barrow, the testator, designed his bounty for the township at large, and that the grantors in the deed were appointed by, and were to act for the township at large. The trusts in the will are referred to in the deed, and that instrument, on its face, shows that the grantors meant to perfect the title to the land, to carry out the benevolent designs of the testator. The word town is used, it is true, instead of township, but they were designed as the same. In truth, it is very common now to call a township by the name of a town. As it is presumable the grantors in this deed acted honestly, and designed no wrong, it would be difficult to explain their conduct, but for the suggestion, that at the time this deed was made, or at all events, when the will was executed, the boundaries of the township of Greenwich did not extend beyond those given in this deed, and if so, the restriction left the trust exactly as it was left by the will of Barrow, to the township at large. They possibly designed that any subsequent enlargement of the boundaries of the township, should not affect this property. *Ex aequo et bono,* therefore, it would seem the township, when it came subsequently to be enlarged, had a claim to this rent, and I have little doubt, to have given it that direction would have been wise and prudent.

But I am to decide on the rights of parties as the case stands,

25*

CASES IN CHANCERY,

[Sheppard v. Hunt et al.]

and I see no way of avoiding the payment of the rent according to the express reservation in the deed.

The rent is reserved by the deed, and not by the will of Barrow. The will devised the land, and the title proving defective, other persons acquired a fresh title, and they have imposed upon the purchaser certain specified terms, which must be complied with. Especially cannot the grantee in that deed, and those claiming under him, deny its binding authority.

The long acquiescence in this construction, would render it, at this day, unwise and improper in the court, to interfere to produce any change. Public policy forbids the disturbance of so ancient and so well settled a principle, by the practice of the parties.

The case is a proper one for a bill of interpleader. The complainant found two claimants for the rent, under his deed, both having a very fair show of right. He was justified, I think, in having the question settled, before he paid any more money.

My opinion, therefore, is, that the rent in question is payable to the trustees of the town of Greenwich, appointed by the inhabitants within the bounds defined in the deed, and that the costs of this suit be paid out of the rent reserved. The complainant should pay interest on the rent reserved, after the day of payment.

Decree accordingly.